UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

GEORGE WESLEY HASTINGS and    Case No. 05-81794
CELIA FARRAR HASTINGS,    Chapter 7
    Hon. Marci B. McIvor
           Debtors.
_____/

DAVID ALLARD,

           Plaintiff,

v.    Adv. Proc. 06-4844

JAMES D. PRATT,

           Defendant.
_____/

OPINION DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment. For the reasons set forth below, this Court DENIES Plaintiff's Motion.

I.

FACTUAL BACKGROUND

Defendant, James Pratt, is an attorney practicing in Port Huron, Michigan in the area of family law. (Plaintiff's Exhibit B). Celia Farrar Hastings ("Ms. Hastings") is the sole shareholder of Celia F. Hastings, P.C., a law firm located at 814 Holland Avenue, Port Huron, Michigan, specializing in personal injury law. On or about July 27, 2001,

Ms. Hastings as principal of her law firm and the Defendant entered into a contract whereby Ms. Hastings agreed to loan the Defendant $10,000.00. The Defendant made payments to the law firm in the total amount of $2,473.93.

On October 13, 2005, the Debtors filed for bankruptcy under chapter 7. David W. Allard was appointed as the chapter 7 Trustee. Ms. Hastings' interest in her law firm was listed as an asset of the bankruptcy estate, with a value of only $1.00. Upon review of the schedules and documents provided, the Trustee came to the conclusion that the value of the law firm exceeded $1.00, and the Trustee discussed with the Debtors the possibility of dissolving the law firm or taking other action by which such value could be realized. In settlement of the Trustee's potential claims with respect to Ms. Hastings' interest in the law firm, the Debtors assigned the law firm's rights against the James D. Pratt (the "Defendant") with respect to money owed to the firm by the Defendant under a loan agreement between the Defendant and the firm. On June 20, 2006, the Court entered an order assigning to the Plaintiff the interest in the loan.

On December 30, 2005, Plaintiff sent a demand letter to the Defendant, requesting that he turn over the remaining balance of the loan, which was $7,526.07. The Defendant did not turn over the balance of the loan, believing that he is entitled to offset the amount owed on the loan by several referral fees he was owed. These referral fees were not in writing but, based upon discussions with the Debtor, Defendant believed he was entitled to receive 1/3 of the fee for any case he referred to the Debtor's firm. Defendant also states that he discounted attorney's fees for a divorce case involving a relative of Ms. Hastings and this discount should be credited

2

against money owed to the firm.[1]

On June 29, 2006, Plaintiff filed this adversary proceeding. The Adversary Complaint alleges three counts: (1) Breach of Contract for Defendant's failure to repay his loan to Plaintiff; (2) Quantum Meruit claiming that it would be unfair to permit the Defendant to retain the benefit of the loan without paying her back; and (3) Unjust Enrichment claiming that, as a result of Defendant's failure to repay the loan, the Trustee has incurred damages.

On December 7, 2006, the Trustee filed this Motion for Partial Summary Judgment arguing that, as a matter of law, Defendant is not entitled to offset any referral fees owed to him by the firm because he failed to inform referral clients of the fee splitting or give them an opportunity to object, in violation of the Michigan Rules of Professional Conduct 1.5(e). The Defendant responds, arguing that: (1) he believes that he sent referral letters to affected clients (although he has only been able to locate one at this time); (2) the Plaintiff does not have standing to raise this issue because it should be raised by the affected clients; (3) even if Defendant breached Michigan Rule of Professional Conduct 1.5(e), the remedy for this breach should be meted out by the State Bar of Michigan in the way of censure, fine or otherwise; and (4) Celia Hastings agrees that the obligations on the loan no longer exist.

---

[1] Plaintiff argues that no fees were discounted and an offset is not appropriate. Plaintiff recognizes that this presents an issue of material fact, and has, therefore, only requested partial summary judgment.

3

II.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056 (Rule 56 applies in adversary proceedings). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. 317, 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252. The court must believe the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Liberty Lobby*, 477 U.S. at 255.

4

III.

## JURISDICTION

Bankruptcy courts have jurisdiction over all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11. 28 U.S.C. §§ 1334 & 157. Core proceedings include proceedings for orders to turn over property of the estate. *Id.* § 157(b)(2)(E). As this is a proceeding to determine whether Defendant must turn over property, this is a core proceeding under 28 U.S.C. § 157(b). Thus, this Court has jurisdiction over this matter.

IV.

## ANALYSIS

The Plaintiff argues that, as a matter of law, Defendant may not credit any referral fees to which he may be entitled against the amount he owes the law firm because he failed to inform, and obtain permission from a client, of the fee splitting arrangement in violation of the Michigan Rules of Professional Conduct 1.5(e)(enabled by MCL 600.904). Michigan Rules of Professional Conduct 1.5(e) states:

> a division of a fee between lawyers who are not in the same firm may be made only if: (1) the client is advised of and does not object to the participation of all the lawyers involved; and (2) the total fee is reasonable.

The text of ethics opinion RI-234 states that,

> both the referring lawyer and the receiving lawyer are required to comply with MRPC 1.5(e) in order for the division of fee to be proper, both the referring lawyer and the receiving lawyer are responsible to see that the client is properly advised and does not object to the participation of the

5

lawyers. . . .

Plaintiff asserts that the Defendant failed to advise the referral clients and failed to allow the clients to object to the participation of all the lawyers involved and, therefore, his fee should be disallowed. The Trustee's argument relies principally on the affidavit of Judy Taylor, a personal injury client that was referred to Debtor's firm by the Defendant. Ms. Taylor states that she initially met with Defendant, that Defendant referred her to Debtor's firm, that the firm obtained a settlement of $37,500.00,and that she was never advised that the Defendant would be receiving 1/3 of the firm's fee. (Plaintiff's Exhibit C at ¶ 3,4, and 5).[2] Additionally, at no time was she ever given the opportunity to object to the Defendant receiving this fee. (Plaintiff's Exhibit C at ¶ 6). Therefore, the Plaintiff argues that the Defendant loses his right to claim referral fees when he failed to advise the client of the fee splitting. Plaintiff does not argue that either the total fee paid (approximately$12,500.00), or the referral fee requested by Defendant (approximately $4,100 ), are unreasonable.

Assuming *arguendo* that the lawyers in this action failed to obtain permission from the referred clients to split fees,[3] this Court finds that, as a matter of law, MRPC 1.5(e) does not entitle the Plaintiff to the relief requested in its Motion for Partial

---

[2]Her case settled for $37,500, of which the Firm received roughly $12,500.00. Plaintiff's Exhibit C at ¶ 4. The Defendant claims that he is entitled to roughly $4,166.00, which is more than half of what he owes on the Loan.

[3]The Court only has the affidavit of one client. It appears that Defendant and Debtor's firm frequently referred cases to each other, because Defendant did not practice personal injury law and Debtor's firm did not practice in Defendant's area of practice. There is nothing in the record to indicate how the referral fee agreements were handled in the other cases.

6

Summary Judgment. The rule itself provides no guidance as to the appropriate remedy in a case where all parties, including the client, benefitted from the referral. Furthermore, the case law relied upon by Plaintiff provides no basis for denying a referral fee in a case where the affected client has not raised any issue regarding the failure to comply with MRPC 1.5(e) and no unethical conduct has been alleged.

In *Idalski v Crouse Cartage*, 229 F. Supp. 2d 730 (2002), an attorney sought enforcement of a referral fee agreement that had been signed and agreed to by the clients, as required by MRPC 1.5(c). The plaintiffs (former clients of the attorney seeking the referral fee), strenuously objected to payment of the referral fee, because the attorney had embezzled substantial sums from monies the attorney had previously recovered on behalf of the plaintiffs. The attorney had been convicted for that embezzlement and other embezzlements from client trust accounts, after the date on which the clients signed the referral agreement. The court agreed with the plaintiffs and denied the attorney's demand for a referral fee. The court stated:

> The plaintiffs here have testified that had they known of Lewis' misconduct, they "would have fired him as their attorney immediately." Transcript citation omitted. They would not have consented to the referral arrangement which, in effect, would have permitted Lewis to use their own money (i.e., the lawsuit proceeds) to pay them back [for the funds Lewis, the attorney had embezzled]. Although Jeanne Cothran and Kimberly Idalski do not have an absolute right to object to the payment of the referral fee once a valid referral agreement is made, the Court finds that they were fraudulently induced to consent to the referral arrangement. The referral agreement is voidable and, since Jeanne Cothran and Kimberly Idalski seek now to avoid it, it will not be enforced.

*Id.* at 740. The court refused to award the referral fee because of the criminal and unethical conduct of the attorney requesting the fee. The voiding of the referral

7

agreement benefitted the plaintiff client.

The other case relied upon by Plaintiff in arguing that Defendant cannot claim a right to a referral fee is *Evans & Luptak v Lizza*, 650 N.W.2d 364 (Mich. Ct. App. 2002). In the *Lizza* case, the court refused to enforce a referral fee agreement where the agreement itself created a conflict of interest. The case turned on the unethical conduct of an attorney receiving a referral fee in a case where he had a conflict of interest and, therefore, a potential financial incentive to settle the case in a manner that might be adverse to the best interests of his client. The court stated:

> We do not accept the contention that an attorney can receive fees for representation which from the outset gives the appearance of impropriety and is violative of established rules of professional conduct. An attorney may not recover for services rendered if those services are rendered in contradiction to the requirements of professional responsibility and inconsistent with the character of the profession.

*Id.* at 370. As in the *Idalski* case, the court refused to enforce a referral agreement, not because of lack of compliance with MRPC 1.5(e), but because the lawyer seeking enforcement of the referral fee agreement had engaged in unethical conduct.

These cases have no bearing on the facts of the instant case. In the instant case, the client agreed to the referral of her case to Debtor and the total fee paid was reasonable. The only alleged misconduct in this case is that neither Defendant nor the Debtor obtained the permission of the client to split the fee. On these facts, where there is no allegation of unethical conduct, and the client has never raised an objection to the payment of the referral fee, the Court finds that Defendant is entitled to his referral fee.

8

As additional support for its ruling, this Court notes that the Plaintiff in this action, the Trustee, is standing in the shoes of the Debtor in attempting to collect on a loan owed to Debtor's estate. The Debtor herself, however, could not argue that the Defendant's failure to advise a client of the fee splitting arrangement allowed Debtor to retain Defendant's portion of the fee because MRPC 1.5(e) requires *both* parties to a fee splitting agreement to advise the client of the arrangement. Since Debtor is equally at fault for failing to advise Ms. Taylor of the fee splitting arrangement it would be unfair to allow Debtor to benefit from the omission while punishing Defendant for the exact same conduct.

The Plaintiff essentially conceded that it would be unfair to reward the Debtor and punish the Defendant for the same conduct (i.e. failing to obtain permission from the client for fee-splitting) when the Plaintiff stated at oral argument that the Plaintiff was not claiming that the referral fee in question was property of Debtor's estate. Plaintiff claimed it was only asserting that Defendant had no right to the referral fee and, therefore, could not assert the referral fee as a setoff off to the loan owed by Defendant to Debtor's law firm. This Court finds that Plaintiff's argument draws a distinction that does not really exist. Debtor's firm never paid the referral fee to Defendant, which is why Defendant claims a right to set the fee off against the amount he owes to Debtor's firm on the loan. If this Court holds that Defendant is not entitled to set off his referral fee, Debtor's firm keeps the fee, and Debtor's firm benefits from Defendant's failure to advise the client of the fee splitting arrangement, even though Debtor's firm engaged in the exact same conduct. This result cannot be the intended

9

result of MPRC 1.5(e).

In summary, based on the law and the facts of this case, the only party with the right to challenge the referral fee agreement based on noncompliance with MRPC 1.5(e) is the client, Judy Taylor. Even if the client were to prevail (and that seems an unlikely result given that Ms. Taylor had full knowledge of the participation of all attorneys and the total attorney fee is reasonable), the disputed referral fee would go to the referred client – not to the bankruptcy estate. In other words, the fact that the Defendant did not inform the referred clients of the referral fee (especially when the Debtor's law firm was under the same obligation to inform the clients) does not entitle the Plaintiff to recover those funds for the bankruptcy estate.

V.

CONCLUSION

For the above-stated reasons, this Court denies Plaintiff's Motion for Partial Summary Judgment.

**Signed on February 15, 2007**

                                            **/s/ Marci B. McIvor**
                                         **Marci B. McIvor**
                                         **United States Bankruptcy Judge**